May it please the Court. Good afternoon, Your Honors. My name is Jonathan Stein-Sapir from the law firm of Kinsella, Weizmann, Iser, Kump, and Aldisert, and I represent the plaintiffs and appellants in this matter, Jacee Dugard and her daughter A. Dugard. I'm going to try to reserve five minutes, and I'll try to keep an eye on the clock. I know it's my responsibility. As set out in the briefing on this appeal, there's three issues. All of them overlap to some degree, but at the same time, they are analytically distinct. The first issue, of course, is the issue of duty on which the district court granted summary judgment against my client, and that's whether the alleged duty here is limited because Jacee Dugard was not specifically identified to the government as a foreseeable victim of Philip Garrido before her kidnapping. The second is the issue of discretionary function exception, where the government asks for affirmance based on the contention that the district court erred by twice finding that this action is not barred by the discretionary function exception. And the third issue, of course, is causation, where both parties have issues with the district court's ruling, and I hope to have time to reach it, but just one comment on causation, which is that I discretionary function somehow breaks the chain of causation. All the cases that the government cites on that are California Tort Claims Act cases dealing with California's own discretionary immunity under its own Tort Claims Act, and for that reason, I don't think any of those cases are controlling. Before turning to the issues, I did want to make a few very brief comments about the background of this appeal. I do not intend to discuss the harm to my client generally. I don't think it requires any comment, but the gravity of the government's parole officer's negligence in this case, or alleged negligence, I do think very much informs the analysis of all three issues on this appeal, and I just want to briefly say a few words about that. When Mr. Garrido was paroled in January 1988, his parole officer, Houston Antwine, the government's crime officer who's responsible for Mr. Garrido's supervision during the two and a half years before my client was kidnapped, he recognized what everyone else recognized who had dealt with Mr. Garrido. That is that this was a man who had a serious problem, and had a serious problem with drugs in particular, and his problem with drugs was that it caused him to become, to engage in sexually and criminally deviant acts against young women and young girls. So when Mr. Antwine, in his own handwritten notes in 1988, under, in his parole form where it says, objective of the officer in his supervision, his objective, in his own handwriting, is close surveillance of drug use. His handwritten notes in the same form also note that there's a third-party risk in this case. It's greatly increased with drugs. The potential for causing great harm is present if the subject becomes unstable as a result of drug use. During the same year, he had been told that Mr. Garrido was quote, a time bomb. Yet despite all this, Mr. Antwine, in the next two and a half years, learns of almost 70 violations, 70 violations of his drug aftercare special condition of parole. That imposed upon him a mandatory duty to report those violations immediately to the parole commission. And Mr. Antwine never does that. And that's what this case is about. This case is not an attack on the parole commission at all. We take no issue with any actions of the parole commission, at least legally. We take issue with these violations of the mandatory duty. This case is not about a complainant trying to find some random breach of a mandatory duty when the real claim is against some broad exercise of discretion, such as in general dynamics. It's not about, you know, a failed test involving grapes that somehow is in the chain of causation that led the commissioner of the FDA to stop the importation of grapes from Chile, like in the Third Circuit's decision in Fisher Brothers. So I just wanted to state that that's what this case is about. Well, that's not what we're really here to talk very much about today, are we? I mean, we're not really questioning the negligence or the culpability of the parole officer. We're looking to see if, under California law, liability would attach in this situation. Absolutely. And most... The facts are horrendous. Well, there's no doubt. And I don't want to dwell on those. And surely something should have been done differently. But I think we need to focus on something else, don't we? Yes. Well, all of that goes to this discretionary function, immunity. And what I want to make a point is this is not about the parole commission. This is about mandatory duties that were violated. And all those facts are relevant to whether a negligence-based duty would be imposed under California law, because the touchstone of duty under California law is foreseeability. That is the number one factor that courts look at. And with that, I want to turn to the duty issue, which is obviously, at least I think, the most important issue. And I think it's important here to recall that the district court did hold that there was a special relationship between the government and Garrido as a result of the custodial relationship. It's not something the government disputes on appeal. I think it's important also to recognize that the district court also twice held that the government did have a negligence-based duty to exercise reasonable care in supervising And that's where I want to – that's where the district court went wrong, in my opinion, and I want to explain why. Obviously, we tried to explain it in the briefs. But I think this really comes down to a subtle issue, but it's a subtle issue that really makes all the difference in the world. Here, there's no dispute that Houston Antwine, the government's parole officer, had a duty to report drug use of a dangerous felon to a specifically identifiable person, in this case that person being the parole commission. He breached that duty. All persons who would be foreseeably injured as a result of the breach of that duty, that failure to report to a specifically identifiable person, have standing to sue under California's general negligence law applicable to private persons. And that's the holding of Bragg v. Valdez. That's the holding of Reisner v. the Regents of the University of California. And it's the holding of Myers v. Quesenberry. The victim himself does not need to be reasonably identified. There has to be a duty to warn or to report to a specifically identifiable person. So in Bragg, the duty to warn was to the patient and also the patient's family about the grave consequences that could occur if he failed to take his medication. However, the victim in that case was a random woman who had been attacked by the patient as a result of the failure to warn the dangerous person's family of the grave consequences which could result if he did not take his medication. It's the same duty here. There was a duty to warn the parole commission, just like the duty in Bragg to warn the family that grave consequences would occur if he did not take — well, if he did take his medication in this case, his illegal medication. Having breached that duty, J.C. Dugard is a foreseeable victim of the breach of that duty, the duty to report to a specifically identifiable person. Same thing in Reisner v. The Regents of the University of California, where the dangerous person is not dangerous through any fault of her own. She was inadvertently infected with HIV and her doctor sort of inexplicably didn't tell her or her parents. But the victim in that case is a young man who had intercourse with the girl several years later and was not identified at all to the doctor who failed to exercise his duty to warn the girl and her parents. And the court in Reisner also says it doesn't matter that the boy or the young man was not clearly identifiable to the doctors. What matters is that there was a clearly identifiable person to warn, the parents or the girl, and those people could have then taken steps to exercise reasonable care which would have prevented the injury. But you know what they're going to come back with. They're going to come back with and say that's a doctor-patient situation, and under the FTCA case law we look to the most analogous private-party relationship, and they're going to point to those rehab center cases, Vu, and so why don't you tell me why they're wrong about that? Okay, so let's talk about the rehab center cases. There's Beauchesne, Cardenas, and Reis. And Vu, which is a Job Corps case. The Job Corps case. Vu, as we said, was review under a very deferential standard of review. And I think, but let me focus on the California Court of Appeal cases. And I can talk about Vu as well. But what's the alleged duty in Beauchesne, the alleged duty in Cardenas, and the alleged duty in Reis? They're completely different duties. In Beauchesne, the duty is not to allow a dangerous person into your rehabilitation program, which was the Synanon program in San Francisco. We do not contend, could not contend, that there was a duty here not to allow Garrido into parole at all. And under California law, and I'll talk about the duties in the other cases, but I think this point is really key. Under California law, the duty analysis requires the court to look at the specific act or acts that the plaintiff contends that the defendant had a duty to do or not do. That's Castaneda versus Olshur. There's several cases that say that. You've got to look at the specific act, not the actors. Certainly the actors are relevant to it, but it's the specific act. The acts that we're alleging here are just not the acts in Beauchesne. They're not the acts in Cardenas, and they're not the acts in Reis. There was no alleged breach of a duty to warn a specific person in those cases. In Cardenas, it was that they should have evaluated the probationer before he was assigned to the rehabilitation center there. Again, we don't have that claim in this case. We actually had a similar claim at the complaint phase, but we do not have it now yet. Let me ask you about in Beauchesne, though, one of the things the court looked to in assessing whether the rehabilitation center should be liable is they look to, they actually look to state log analogs. They look to the state. This is why I find this an interesting question in this case. Under the FTCA, we look to private party liability, correct? Absolutely. Now the California, at least in that decision, California in assessing private party liability looked to the state. Exactly. So aren't we required to look at state, in a sense, state parole officer liability because under California law, that's what they look to assess? No. Why not? Because when you can't look at, well, first of all, you just can't look at state officer liability. I see what you're saying. No, no, I'm following you. Let me just follow you. Sure. You can't look directly at state officer liability. You can't look at the Thompson case, for example. Agreed. Now, what Beauchesne does is there's two things. First of all, the duty is completely different, and I think that's really the dispositive issue because I don't think it's the actor that matters. It's the duty. Now, but to get to your question directly, what was the public policy that the state says that, or the state court of appeals says that they, the reason that they're finding no duty of care there? It's because they want to make sure that the state government has these programs available to it because if these programs do not have the same state immunities that the state has, the state will have no ability to do this. So that public policy is just not applicable here. Also, as we said, I really do think this is kind of a backdoor way to get in state government immunities. So I, it's just, and the other point I want to make is the functions that are being performed by Synanon and Beauchesne and by the other rehabilitation centers, these are, they're performing functions on behalf of the state government. I get it that, as the government rightly pointed out, look, a contractor with the state to build a highway or something like that, I mean, that doesn't somehow turn them into state actors. But what the, what the actors are doing in Beauchesne in these cases, they're performing the one function that private parties are simply not allowed under the federal constitution to do, which is to hold people against their will for long periods of time by force. I mean, these people, what the, what the halfway houses are doing here is, are acting as state prisons. And on, in that sense, the reason they're being given this, basically this immunity, is to protect the state's interests. And I think this goes right to United States v. Munez, also United States v. Olson, and that whole line of cases, Indy and Towing. But what Chief Justice Warren says in United States v. Munez, when he recognizes the tort-based duty of a federal prisoner to sue a federal prison master, is he says, well, having decided that the discretionary function exception doesn't apply here, and at least for the negligence-based duty analysis, we have to assume that it doesn't. Having decided that that's, that Congress didn't want to give them discretionary function immunity, we shouldn't let state court rules somehow come in and, and put that immunity back on, because we want to let Congress draw that line, not the states draw that line. So I, I see I'm at my five minutes, and I will, I will reserve the rest to hopefully address the many other issues on this appeal. Thank you very much. If you may, we'll hear from the government. May it please the Court, Patrick Nemeroff on behalf of the United States government. Now, as we laid out in our brief, there are three independent reasons why Plano's claim fails here, but I'd also like to start with the reason relied upon by the district court, which is the lack of a duty here, and that was that the United States, in its supervision of Garrido, did not owe a duty of care to the general public, but only to foreseeable and specifically identifiable victims, and of course, in making that determination, the district court looked at the most analogous cases involving private actors, which are the cases involving the rehabilitation centers, and now Plano's counsel's primary argument here was that those cases don't involve the same acts, but that, Your Honors, is wrong, and it's particularly wrong with respect to Rice, which is the most recent California case involving a rehabilitation center, and Rice involved a number of claims of negligence, but one of the claims was that the individual who was in charge of the center at the time that the four individuals escaped failed to report that escape to the police, despite knowing about it, and the reason he failed to report it was because he himself was on duty, so it was the exact same failure to report a known violation, in this case an escape, to a known individual, the police, that was alleged, and nonetheless, in addition to a number of other claims of negligence, and nonetheless, the California Court of Appeals said that the center there did not owe a duty of care to the victims because they were not specifically identifiable, and that rule, it's important to recognize, is consistent with the background principles of California tort law, as this court explained in Anderson, which is that the background principle is that normally one does not have a duty to control the acts of a third party. Now, there are exceptions in certain circumstances based on special relationships, but what the California courts held was that that exception should not extend to this context, and in making that finding, the court relied on the factors laid out in Rowland, which is its normal duty analysis, and one of the factors is the policy implications of extending a duty. So it's your position, then, that under no circumstances could the United States be liable for what someone does on probation or parole, to a third party, to a third party? Well, I think the United States certainly could never be liable for failing its duty in supervising the parolee and reporting violations to the parole commission if the parolee then goes on and does something. Yes. And the reason, of course, is that as California courts recognize, you know, we have parole for a reason. We can't keep people in prison forever, and rehabilitation is an important interest, but releasing people on parole or probation, of course, has inherent risks, but it's a risk that we take as the general, the public takes it on because it serves important policy interests, and so what the California courts determined is that imposing a duty of care there without a specifically identifiable individual, you know, would create too much of a disincentive to creating these programs and, therefore, was contrary to public policy. And I guess the reason I hesitated in answering your question, Your Honor, is at least with respect to the duty analysis, of course, it would be different if there were a specifically identifiable individual. So let me give you just a hypothetical so I can understand your position. Imagine, and I don't think this would ever happen, but imagine Jeffrey Dahmer got parole, right, and he has demonstrated a history of eating, killing and eating young males. So he's on parole, and he says, you know what, I'm going to do this again. He doesn't say who. He just says, I'm going to do this again. And as part of his conditions of parole, he's not supposed to hang around near basketball courts or where you might find young men. And he's found near a basketball court with young men and not violated, even though it's a clear violation of the terms of his supervision. And the next week, he kills and eats one of the people playing on the basketball court. Under your view, no liability for the United States in that situation? I don't think so, but I think the question there would be one of whether or not there's a specifically identifiable victim. Perhaps if he was hanging out by a specific basketball court, under California law, maybe that would suffice. I just don't know the answer. But if that's the case, then this guy, Garrido, he victimized all kinds of people in the Lake Tahoe area, which is not a large geographic area. It's actually quite large in terms of space, but it's very small in terms of number of people. And it seems to me that in that history, wouldn't any 11-, 12-, 13-year-old girl be an identifiable victim for this guy? I don't think so, Your Honor. And I would note the plaintiffs aren't claiming that the individual, that the plaintiff was an identifiable victim. And that is a much broader population. Even in your example with the basketball court, like I said, I don't think there would be a duty there, but that is a somewhat different question under California law. And of course, I mean, these are troubling facts, but the policy that the California courts have adopted, and duty analysis ultimately is a question of policy, is that imposing this duty to the general public would have too many implications for these rehabilitation programs and therefore should not be adopted. And here is... Could I interrupt you and ask you a question about the public policy? Because it seems to me that all of the rehab center cases are driven by a public policy that goes to the idea that we need these rehab centers to operate because of the prison crisis in California. And if they didn't have an immunity that corresponded to the state immunities, then no one would want to open a rehab center and we'd have a worse prison crisis in California than they already do. And on the flip side, the cases relied on by the appellant are all driven by incentives that suggest that we need to protect the public by requiring information to be disseminated to the person with whom there is a special relationship. And I'd like to have you focus on where you think the incentives are here because I don't think that the U.S. Parole Commission needs to be incentivized. They exist, they're going to continue to exist. Don't the incentives run in the direction of wanting to incent parole officers to monitor their supervisees carefully? So could you talk about that a little bit? Sure, Your Honor. I mean, that certainly is one incentive. And the California courts recognize in these rehabilitation center cases that on one side of the ledger is the desire to create an incentive for more safety for the general public. But on the other side of the ledger in both the California cases and here is an incentive for the government to rehabilitate prisoners and to allow individuals out of prison so that they can reenter society. And that is equally applicable in the federal context as in the state context. But the parole commission is not going to go out of business. And it's not as if the U.S. government is going to stop supervising defendants. The concern in the California rehab cases was that nobody would want to operate a rehabilitation facility. So that incentive doesn't seem to exist when you're talking about the parole commission. So I don't think the policy factors of the courts we're looking to were at that level of specificity. I do think the policies are the same. But even if Your Honor thinks that there are somewhat different policy factors at issue here, that doesn't change this court's analysis. This court is still under the Federal Tort Claims Act to look at the most analogous private situation. And under LaBarge, for example, which was this court's decision involving an employee compensation claim against the federal government, the court held that the United States was most analogous to an in-state employer, even though it readily acknowledged that the policy factors that drove the immunity scheme at issue there were not present for the United States because the United States wasn't paying into the compensation scheme. So it really, I do think the policy factors are analogous and do apply in both. But regardless, California courts have made this decision. These are the most analogous cases, and they're the ones this court should look to. Now, with respect to the cases that the plaintiff points to, those are all cases involving doctor-patient relationships, and the courts were very clear that that was the factor they were relying on. And I'd particularly point the court to Myers, which is one of the cases that's the case that involved the failure to warn a diabetic patient about the dangers of driving. And what the court said there was it wanted to stress that the policy factors that weigh against liability in other contexts were not present there. There, the only really policy factor that was present was the one favoring doctors living up to a high duty of care for their patients, informing their patients of their medical conditions. And there wasn't this contravening factor like there is here regarding the desire to encourage rehabilitation of convicts. Now, we did address alternative grounds. I'm happy to address those here. I do think, though, that the district court's analysis of duty is a straightforward means for affirmance here. I do have a procedural is the wrong term to use, but I just want to make sure I understand where exactly the status of Mr. Garrido, because in the district court's order, the district court talks about how he was on supervised release, and that's incorrect. He was on parole the whole time. That's correct, Your Honor. So I saw that in the order. So I don't think it necessarily changes the analysis at all, but in terms of if we have to write an opinion in this case, one way or the other, I want to make sure we get it right. So, again, he was not on supervised release. He was on parole supervision. My understanding of the facts is that he was on parole supervision certainly at the time of the abduction. At a later date, I believe his federal parole ended and he was only under the supervision of California. Right. But supervised release has a very distinct thing to mean in the federal system. I was a prosecutor for a long time. I see. So I want to make sure that he wasn't on supervised release again. I don't think it affects the analysis necessarily, but I just want to, unless one of you thinks it does, you can explain why it would differ. I don't think it does. But I just want to make sure we have the terminology correct here. That's right, Your Honor. He was on parole. Well, unless there are further questions. Thank you. Okay. Thank you. Thank you. Just to confirm, Judge Owens, your question, he was definitely on parole, not supervised release. I think that was just a mistake. Just a, you know, supervised release didn't exist at the time Mr. Garrido was. You know this better than I do as an AUSA. Look, I think that, and I think one thing that the government says is just very correct in its brief is you've got two lines of cases here. And this is not really a state law question in the sense that there's a federal question here, which is which one are the like circumstances under the FTCA. And I just want to take a step back on the history here, which is that this duty to control, duty to warn, it kind of comes up in the 50s and 60s. And the first case we have on it is this Poncher v. Brackett case involving the grandparents and grandson. And it's not a very well-developed analysis that I think is helpful for us right now. The next big case, of course, is the case everyone knows is Tarasoff. Tarasoff involves a psychotherapist and a patient. Then the cases branch there. And the cases go in one direction. And the main case there is Thompson v. County of Alameda involving the state government. So the cases go in these two different branches. And one of the things one of my colleagues asked me is, well, aren't there other, you know, analogs here that you can look at? And we searched. Maybe your law clerk's found something that we haven't. So it really is excellent. I haven't. Okay. I think we're stuck with the situation you described. Yeah. And so, I mean, there's these two lines of cases. And I think that the Beauchene, the Cardenas, and the Rice case, and I'm going to address this point on Rice in one second, but I think those cases are, they're infected by these state government policies to encourage these private parties to basically act as agents for the state and to grant them immunity. But they don't actually, I mean, I hear your point. It may be lurking in the background. But the court could say that the state liability extends that far, or state immunity extends that far, and it doesn't. You're absolutely right. It could say that, and it didn't. And I recognize that situation. But I do think, given that the duty analysis is based on a public policy, I don't think that public policy is applicable in this situation. And I do think that, you take Bragg, I don't think the private person analog is that far off. We're talking about a dangerous mental patient who's released from a mental hospital. That's not much different from parole, either. I did want to point out that, Judge Owens, you recognized it, which is that he was precluded from going to South Lake Tahoe. So at least there was that geographical limitation. As far as Rice, and I do recognize the claim that the government made. He's correct. There was one alleged violation there that could be at least somewhat analogous, which was the failure of the supervisor, who was actually another parolee, to call the police. And I think that it's one little duty in there that's in there amongst others. And I just don't think that the connection, the foreseeability that calling the police would have actually prevented the harm at all. And under the Rowland analysis, you've got to look at whether imposing that duty would actually prevent the harm. Remember, these people, they escaped, they went out and attacked some people, I think, the same night. So I'm not sure calling the police would have had any sort of connection to the injury there. And then I just wanted to close by looking to the same case that the government looked at. And I think I'm quoting from the same language, and it's the Myers versus here are not public institutions, officials, or employees. Consequently, concerns over government immunity and the impairment of public functions play no part in our analysis. And the two cases they cite as a compare cite are Davidson v. City of Westminster and Thompson v. County of Alameda, both of which were heavily relied upon by the district court. That's at page 893 of the opinion. So unless Your Honors have questions, I'm prepared to submit on our briefs. Could I just ask you a quick question? Is the parolee's relationship to the police in the Rice case the same as the parole officer's relationship to the parole commission? No. Well, first, so in Rice, they weren't parolees or probationers. They were actually inmates. I'm sorry, inmates, that's what I meant to say. Were they, is the relationship the same? Yes, in the sense that there was a custody of the defendant, but no, and there was no duty to report drug use with knowledge that that drug use would lead to the sort of deviant acts that were alleged here. But there was certainly a custodial relationship. I concede that. We thank you. I'm all set. We thank all counsel for your arguments, very helpful arguments in a very difficult case. With that, we're concluded and we're adjourned. I want to thank the panel for rescheduling too, by the way. Thank you.
judges: Clifton, Owens, Smith